## Case No. 16,440.

### UNITED STATES v. TAYLOR et al.

[3 McLean, 539.] [1]

Circuit Court, D. Indiana. May Term, 1845.

CONSTITUTIONAL LAW—ISSUANCE OF DISTRESS WAR-
RANT BY TREASURY AGENT—RIGHT
OF JURY TRIAL.

1. The validity of the act of 1820 [3 Stat. 592] which authorises the agent of the treasury to issue a distress warrant against a defaulting officer, and his sureties, may well be doubted.

2. The judicial power is vested, by the constitution, in the supreme court and in such inferior courts as congress shall establish.

3. The issuing of the warrant is a ministerial act, but to decide in what case it shall issue partakes more of a judicial than a ministerial power.

---

1 [Reported by Hon. John McLean, Circuit Justice.]

4. The right of trial by jury is secured to every citizen, where the amount in controversy exceeds twenty dollars.

At law.

Mr. Cushing, U. S. Dist. Atty.
M. G. Bright, for defendants.

McLEAN, Circuit Justice. This is an action of debt brought on the official bond of [G.] Taylor as marshal of the district of Indiana, assigning for breach of the condition of the bond, that a warrant of distress was issued by the solicitor of the treasury of the United States, against one James T. Pollock, receiver of the land office at Crawfordsville, and his sureties, for the defalcation of said Pollock, as receiver, directing said Taylor, as marshal, to seize the goods, chattels, lands and tenements of said Pollock and his sureties, &c. The warrant, being in due form, was received, 28th of April, 1838, for $40,498.87, and duly came to the hands of Taylor the —— day of May ensuing, but was never served. To the declaration a general demurrer was filed and joinder. The question was submitted, without argument, whether the law which authorises the procedure be constitutional.

Doubts are entertained as to the constitutionality of this law; but as it has been acted under since its enactment, and no question raised as to its repugnance to the constitution, the court would not hold it void, at least without an argument. But two or three suggestions will be made, the accuracy of which may be tested by certifying a division of opinion, or by writ of error, should the decision eventually be a final one. The act in question was passed the 15th of May, 1820, and is entitled "An act providing for the better organization of the treasury department." The second section provides that "any officer who shall have received the public money before it is paid into the treasury of the United States, shall fail to render his account, or pay over the same in the manner, or within the time required by law, * * * the amount due shall be certified by the comptroller to the agent of the treasury, who is required to issue a warrant of distress against such delinquent officer and his sureties," &c. The third article of the constitution provides, "that the judicial power of the United States shall be vested in one supreme court, and such inferior courts as the congress may, from time to time, ordain and establish." And in the seventh article of the amendments to the constitution it is declared, "that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

Now, the statement of an account is a ministerial duty, and also the issuing of a warrant, but the exercise of a judgment whether the case comes within the statute can scarcely be held a ministerial act. There are indeed many acts required to be done

by treasury officers, which partake more of a judicial than a ministerial character. Treasury officers, of necessity, decide on claims, on the evidence produced. We will not stop here to inquire whether congress may not, under the power to establish inferior courts, authorize the treasury to decide certain claims. Practically, the treasury officers who act upon these, exercise judicial powers—not in form, but in substance. No formal pleadings are filed, but the claim is stated for property purchased by the government, or for services rendered, and a final decision is made. There is no appeal except to congress, as the government cannot be sued. No one has ever doubted this power. But the nature of the power under consideration is very different from this. A warrant is authorised to be issued against the defaulter, without notice and without investigation, except merely turning to the books of the treasury, and ascertaining the amount charged. And under the warrant, the goods and chattels, lands and tenements, of the defaulter, are taken and sold on short notice; and if the sale of these be insufficient to pay the amount due, his body is taken and imprisoned. And this warrant also authorises the marshal to take the goods and chattels, lands and tenements, of the surety, and sell them on short notice. Here is no inquiry as to the due execution of the bond by the surety, or the amount which his principal owes. He may have claims of set-off against a part or the whole of the sum claimed.

This procedure deprives the citizen of the right of a trial by jury. It is a most harsh and unnecessary proceeding, and must always be injurious, if not ruinous, to the parties against whom it is instituted. In a judicial proceeding, unless the defendant had actual or constructive notice, a judgment is treated as a nullity. And it would seem to be the dictate of natural justice, that no individual should be prejudiced by any proceeding, judicial or otherwise, without notice. But, as the courts of the United States have sustained jurisdiction, on a treasury warrant, and as the question is a very important one, with the consent of the parties and at their request, the court will certify to the supreme court the question of jurisdiction, and will not now decide it.

The case was not carried to the supreme court.